NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMUEL M. CHAZANOW, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 11-1094 (CCC) |
| v. | : | |
| | : | OPINION |
| SUSSEX BANK, ET AL. | : | |
| | : | |
| Defendants. | : | |

**CECCHI**, District Judge.

I.    **INTRODUCTION**

This matter comes before the Court by way of a motion to dismiss Plaintiff Samuel M.

Chazanow's Fourth Amended Complaint ("FAC") filed by Defendant Donald L. Kovach

("Defendant") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered

the submissions made in support of and in opposition to the instant motion.[1] No oral argument

was heard pursuant to Federal Rule of Civil Procedure 78. Based on the reasons that follow,

Defendant's motion to dismiss is granted with prejudice.

II.    **BACKGROUND**

As detailed in both this Court's March 13, 2012 and November 29, 2012 decisions, this

case involves an employment contract and a consulting agreement (the "2009 Consulting

Agreement") between Plaintiff and Sussex Bank (the "Bank"). On August 1, 2003, Plaintiff

entered into an employment contract with the Bank. (FAC ¶ 8.) Subsequently, the Bank entered

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner
v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991)
("It is well established that failure to raise an issue in the district court constitutes a waiver of the
argument.").

into a joint venture with National City Mortgage, Inc. ("NCM"). As part of this reorganization, Plaintiff became both an employee of the joint venture as well as a consultant to the Bank. (FAC ¶¶ 15-16.) On or about August 1, 2005, Plaintiff signed an initial consulting agreement with the Bank. (FAC ¶ 17.) That consulting agreement expired on its own terms on December 31, 2008, and on January 1, 2009, the parties entered into the 2009 Consulting Agreement. (FAC ¶ 19.) On June 1, 2010, the Bank terminated Plaintiff for cause pursuant to Section 1(b)(v) of the 2009 Consulting Agreement, which defines cause as, inter alia, the failure of the Bank's joint venture with NCM to achieve at least 80% of the annual budgeted net income. (FAC ¶ 24, 10.)

Plaintiff filed his Initial Complaint ("IC") against the Bank on December 15, 2010, claiming breach of contract and breach of the duty of good faith and fair dealing. Plaintiff then filed a Second Amended Complaint on April 25, 2011, adding a claim of intentional infliction of emotional distress against the Bank and a fraud claim against several individual defendants.[2] On March 13, 2012, this Court granted the individual defendants' motion to dismiss the Second Amended Complaint based on deficiencies in Plaintiff's fraud claim. Plaintiff then filed his Third Amended Complaint on March 21, 2012. In doing so, Plaintiff amended his constructive fraud claim against all of the individual defendants to an allegation of fraud against only Kovach.

On November 29, 2012, this Court again dismissed Plaintiff's fraud claim, finding that Plaintiff had not pleaded sufficient facts constituting fraud, and that, in any event, the express terms of the 2009 Consulting Agreement barred Plaintiff's fraud claim. However, the Court allowed Plaintiff an opportunity to cure the pleading deficiencies and file a Fourth Amended Complaint.

### III.   **DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12 (B) (6)**

---

[2] The individual defendants are members of the board of directors of the Bank.

## A. Legal Standard

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell. Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party . . . state with particularity the circumstances constituting fraud." To satisfy this pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). The plaintiff must also allege "who made the purported misrepresentations and what specific misrepresentations were made." Gutierrez v. TD Bank, No. 11-5533, 2012 U.S. Dist. LEXIS 10724, at *8 (D.N.J. Jan. 27, 2012).

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend his complaint only with the consent of the adverse party or permission from the Court. Fed. R. Civ. P. 15(a)(2); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Rule 15(a)(2) provides that "[t]he court shall freely give leave when justice so requires." Leave to amend, however, may be denied

for the following reasons: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) *repeated failure to cure deficiencies by amendments previously allowed*; (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) *futility of amendment*. Foman v. Davis, 371 U.S. 178, 182(1962); Adams v. Gould, 739 F.2d 858, 868 (3d Cir. 1984).

**B. Discussion**

**1. Plaintiff's Fraud Claim**

As explained in detail in this Court's prior decisions, Plaintiff contends that in August 2003, he met with Defendant to review the terms and conditions of his employment contract with the Bank and his stock option agreement. (FAC ¶ 36.) Defendant informed Plaintiff that he would be receiving an annual advance of $75,000 towards his profitability bonus. (Id.) If the bonus was less than $75,000 "the difference would be considered a 'shortfall' and would be deducted from the following year's advance." (Id.) In addition, Defendant allegedly "told the Plaintiff that he would not be responsible for repayment of the 'shortfall' in the event the employment arrangement did not work out. Sussex Bank would, however, deduct any 'shortfall' from any compensation owed to the Plaintiff." (Id.)

Plaintiff further alleges that in August 2005, he again met with Defendant to discuss the terms and conditions of his consulting agreement. Plaintiff asserts that Defendant "told Plaintiff that he and the other Board of Directors had agreed to provide the Plaintiff with a 'supplemental draw' of up to $5000.00 per month for six months. The monthly supplemental draw would be paid to the Plaintiff if the Plaintiff earned less than $8000.00 in any give [sic] month from the joint venture during the first six months of the new contract term." (Id.) Defendant also allegedly stated that "any 'supplemental draw' provided by Sussex Bank would be added to his

'shortfall' and that the 'shortfall' would be deducted from any future earnings due from Sussex Bank." (Id.) Plaintiff now alleges that Defendant also sent him an email on December 11, 2007, indicating that the shortfall was "not a debt, but rather dependent upon the payments emanating from your future efforts and receipt of the annual 20% pre-tax profits of the joint Venture." (Id.)

Plaintiff posits that the representations made by Defendant were false because "[t]he 'shortfall' is considered to be a debt owed by Plaintiff to Sussex Bank and survives contract termination." (FAC ¶ 37.) Plaintiff further alleges that when Defendant made his representations to Plaintiff, "he knew them to be false," and that these representations "were supported by the conspicuous omission of post-termination contractual repayment terms in order to fraudulently induce the Plaintiff to enter into the contracts." (Id. ¶ 38.) Finally, Plaintiff claims that the "falsity of Kovach's statement regarding the 'shortfall' was not discovered by Plaintiff until the [Bank] filed their [sic] 1st Count of their Counterclaims." (Id. ¶ 39.) Based on his reliance on Defendant's representations, Plaintiff was "given a false impression of the risks and obligations involved in the contracts," was "induced . . . to leave his former employer . . . and enter into an employment contract with [the Bank]," and was "again induced . . . to prematurely cancel said employment contract . . . and enter into a Consulting Contract and subsequent renewal Consulting Contract with [the Bank]." (Id. ¶ 40.)

### 2. Plaintiff Did Not Plead Sufficient Facts Constituting Fraud

To state a claim for common law fraud under New Jersey law, a plaintiff must allege "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." Frederico, 507 F.3d at 200. "The stringent pleading restrictions of Rule 9(b), Fed. R. Civ. P., apply to such a claim." Id.; see also Reddick v. Allstate N.J. Ins. Co., No.

11-365 (KSH), 2011 U.S. Dist. LEXIS 145595, at *17-18 (D.N.J. Dec. 16, 2011) (dismissing fraud claim because plaintiff failed to show elements of fraud under New Jersey law); Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 116 (App. Div. 2009) (same).

Having carefully reviewed the Plaintiff's FAC, the Court again grants Defendant's motion to dismiss. The FAC is based upon the same general set of facts contained in Plaintiff's prior amended complaints and therefore does not sufficiently allege that Defendant made a material misrepresentation of fact to satisfy Rule 9(b)'s heightened pleading standard. Plaintiff admits that Defendant informed him that "Sussex Bank would deduct any 'shortfall' from any compensation owed" to him or "from any future earnings due from Sussex Bank." (FAC ¶ 36.) Indeed, the 2009 Consulting Agreement, which Plaintiff signed, confirms his understanding that he was not going to be compensated by the Bank until the shortfall was repaid. (See IC, Ex. 4a, ¶ 2(b)) ("Consultant acknowledges that pursuant to the terms of his previous employment and consulting arrangements with the Bank, he has received in advances $33,762.91 in compensation in excess of the compensation to which he was otherwise entitled (the 'Shortfall'). . . No payments will be made to Consultant hereunder until the Shortfall is completely repaid.") Plaintiff himself acknowledged that by "early 2010, all but a minimal portion of the 'shortfall' has [sic] been offset by profitability bonuses earned." (FAC ¶ 23.) Thus, as explained in this Court's previous decision, Defendant's statements regarding the shortfall – and whether it would or would not be considered a debt – do not constitute material misrepresentations because his subsequent statements and the underlying documents put Plaintiff on notice that he would ultimately be responsible for the shortfall.

Similarly, Plaintiff has again failed to show that Defendant knew or otherwise believed that his alleged statements were false. See Hoffman, 405 N.J. Super. at 116 ("Plaintiff also

alleged that defendants knew that their representations about the product were false, but the complaint lacks specific facts which would establish that defendants had such knowledge."). In fact, Plaintiff alleges that Defendant's representations regarding the shortfall were actually *"consistent* with the contract." (FAC ¶ 36) (emphasis added). Nor does Plaintiff sufficiently allege reasonable reliance based on the express terms of the contracts and Plaintiff's own admissions regarding the shortfall. See Fuscellaro v. Combined Ins. Grp., Ltd., No. 11-723, 2011 U.S. Dist. LEXIS 111470, at *10 (D.N.J. Sept. 29, 2011) ("Without reasonable reliance on a material misrepresentation, an action in fraud must fail.").[3] Finally, Plaintiff's claim that the Bank's filing of a counterclaim demonstrates the falsity of Defendant's statements is without support or merit. In other words, Plaintiff has not demonstrated how or why the Bank's decision to assert defenses in a litigation – which it is entitled to do – supports a claim of fraud against Defendant as an individual.

In sum, because Plaintiff again fails to "inject precision or some measure of substantiation into [his] fraud allegation," Frederico, 507 F.3d at 200, his fraud claim against Defendant is not sufficiently pleaded.

### 3. The Express Terms Of The 2009 Consulting Agreement Bar Plaintiff's Fraud Claim

Plaintiff's fraud claim is also barred by the express terms of the 2009 Consulting Agreement. The 2009 Consulting Agreement states:

---

[3] Plaintiff includes in his FAC a new request for damages in the amount of at least $1,000,000 for his fraud claim. This apparently is in response to the Court's previous finding that Plaintiff's original request for damages stemmed only from his breach of contract claim against the Bank and not from any alleged fraud by Defendant. (See TAC, at 11 ¶ 3) ("Plaintiff prays for the following relief. . . An award of damages in an amount above $200,000, which will fully and fairly compensate the Plaintiff for the wrongful Breach of Contract.") Despite this addition to the FAC, the Court holds that Plaintiff has not sufficiently pleaded that the alleged fraudulent statement was the actual *cause* of any loss suffered. See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, 171 F.3d 912, 935 (3d Cir. 1999) (explaining that there must be a link between the defendant's alleged fraud and the plaintiff's alleged injuries).

> Consultant acknowledges that pursuant to the terms of his previous employment and consulting arrangements with the Bank, he has received in advances $33,762.91 in compensation in excess of the compensation to which he was otherwise entitled (the "Shortfall"). Any payments due Consultant under this provision shall instead be paid to Bank in repayment of the Shortfall. No payments will be made to Consultant hereunder until the Shortfall is completely repaid.

(See IC, Ex. 4a, ¶ 2(b).) In addition, the 2009 Consulting Agreement contains an integration clause, stating that the agreement "contains the entire agreement of the parties hereto with respect to the subject matter hereof and may not be amended, waived, changed, modified or discharged, except by an agreement in writing signed by the parties hereto." (Id. ¶ 9.)

Plaintiff's new allegation that "the contract . . . did not require any obligation, or provide notice, for repayment of any bonus advances or 'shortfall' in the event of contract termination" (FAC ¶ 36) is contrary to the clear language of the 2009 Consulting Agreement that: 1) "[a]ny payments due Consultant under this provision shall instead *be paid to Bank in repayment of the* Shortfall;" and 2) "[n]o payments will be made to Consultant hereunder *until the Shortfall is completely repaid*." The 2009 Consulting Agreement therefore sets forth the express terms of Plaintiff's obligations with regard to the shortfall. (Ex. 4a ¶ 9.) Having signed the 2009 Consulting Agreement and having acknowledged that the entire agreement between the parties was contained in the document, Plaintiff cannot now assert a fraud claim against Defendant based on alleged representations not specifically set forth in the contract. Chen v. HD Dimension, Corp., No. 10-863, 2010 U.S. Dist. LEXIS 120599, at *24 (D.N.J. Nov. 15, 2010) (holding that the express terms of the plaintiff's employment agreement, including its integration clause, barred him from asserting a cause of action for fraud stemming from any alleged

representations that were not specifically set forth in the agreement);[4] <u>Blanos v. Penn Mutual Life Ins.,Co.</u>, No. 09-5174, 2010 U.S. Dist. LEXIS 2326, at *16-17 (D.N.J. Jan. 12, 2010) ("In this case, however, any allegation of fraud in the inducement is conclusively rebutted by the acknowledgments Plaintiff made when executing the Employment Agreement . . . Plaintiff acknowledged by signing the Employment agreement that Penn Mutual had not 'made any promise, representation or warranty whatsoever, express or implied, not contained' in that contract. . . Plaintiff's [fraud in the inducement] claim is barred by the express terms of the Employment Agreement and must be dismissed with prejudice."). As such, Plaintiff's fraud claim against Defendant is barred by the express terms of the 2009 Consulting Agreement.

### 4. Dismissal with Prejudice

Plaintiff has already been granted two opportunities to amend his fraud claim. The Court believes that any additional amendments to this claim would be futile and thus dismisses Plaintiff's fraud claim against Defendant with prejudice.[5] See <u>Jablonski v. Pan American World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988) ("Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.")

### IV.   CONCLUSION

Based on the reasons set forth above, Defendant's motion to dismiss is granted and Count Four of Plaintiff's Fourth Amended Complaint is dismissed with prejudice.

An appropriate Order accompanies this opinion.

---

[4] See the Court's November 29, 2012 decision for a full discussion of <u>Chen v. HD Dimension, Corp.</u>
[5] Because the Court dismisses Plaintiff's fraud claim for the reasons set forth above, it need not address Defendant's additional arguments.

DATED:  August 9, 2013

CLAIRE C. CECCHI, U.S.D.J.